UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| LARONNO TAYLOR, | ) |
| Plaintiff, | ) |
| v. | ) NO. 1:16-cv-00048 |
| | ) CHIEF JUDGE CRENSHAW |
| CHERRY LINDAMOON, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

The referral to the Magistrate Judge is **WITHDRAWN**. For the reasons set out below, Cherry Lindamood's and Hank B. Inman's Motion for Summary Judgment (Doc. No. 31) is **GRANTED**. All other pending motions (Doc. Nos. 55, 58) are **DENIED AS MOOT**.

**I.  Statement of the Case**

   **A.  Factual History**[1]

Laronno Taylor is currently incarcerated at the Northeast Correctional Complex. (Doc. No. 60.) During the times relevant to this action, Taylor was an inmate at the South Central Correctional Facility (SCCF). (Doc. No. 50, PageID# 314–15, ¶ 1.) Lindamood was SCCF's Warden, and Inman was SCCF's Security Threat Group Coordinator. (*Id.*, ¶¶ 2–3.)

Taylor's claims arise out of two physical altercations that took place among members of the Vice Lords, including Taylor, on February 18, 2016, and March 7, 2016.[2] (*Id.* at PageID# 315,

---

[1]  These facts are taken from Taylor's response to Defendants' Statement of Undisputed Material Facts (Doc. No. 50) and Defendants' response to Taylor's Statement of Undisputed Material Facts (Doc. No. 62).

[2]  Taylor states that he is a member of the JVD Vice Lord Organization and others involved in the conflict are members of the 20 Mob Vice Lord Organization. (Doc. No. 50, PageID# 315–17, ¶¶ 6, 9, 12, 15, 18, 21.)

¶ 4, 321, ¶ 47; Doc. No. 62, PageID# 454, ¶ 17.) The February 18 altercation took place in the SCCF Apollo Pod and began "suddenly and without warning." (Doc. No. 50, PageID# 317, ¶ 23.) Taylor was charged with disciplinary infractions for fighting, possessing a deadly weapon, and security threat group activity, to which he pleaded guilty. (*Id.* at PageID# 318–20, ¶¶ 26, 27, 31, 32, 36, 37.) Taylor was then placed in punitive segregation. (*Id.* at PageID# 318, ¶ 30.) Taylor states that there was a nationwide feud going on between the two Vice Lord factions and that he had told Inman that there "would be a war" if he were placed back into population with the same inmates. (*Id.* at PageID# 329, ¶¶ 97, 98.) Taylor did not ask to be put in protective custody after the altercation, although Taylor states that Inman "knew what was going on as the issue was widespread." (*Id.* at PageID# 320, ¶¶ 41, 44.)

Taylor was released from punitive segregation on March 7, 2016. (*Id.* at PageID# 321, ¶ 46.) Later that day, ten inmates, including Taylor, were involved in a physical altercation in the SCCF dining hall. (*Id.*, ¶ 47.) Taylor states that he was "ambushed and stabbed . . . [while] only trying to protect himself." (*Id.* at PageID# 322, ¶ 49.) Taylor was again charged with disciplinary infractions for fighting, possessing a deadly weapon, and security threat group activity, to which he again pleaded guilty. (*Id.* at PageID# 326–28, ¶¶ 79, 80, 84, 85, 89, 90.) Taylor states that Defendants knew of the risk to his safety and were deliberately indifferent to it. (*Id.* at PageID# 329–30, ¶¶ 96, 97, 106.) Defendants state that they did not have any reason to know that the March 7, 2016 altercation would occur. (*Id.* at PageID# 329–30, ¶¶ 101–06.)

SCCF follows Tennessee Department of Correction (TDOC) policy with respect to inmate grievances. (*Id.* at PageID# 331–32, ¶ 113.) Upon arrival at SCCF, each inmate receives an inmate handbook with the grievance procedure, which permits "inmates to submit a written complaint/grievance concerning the substance or application of a written or unwritten policy or

practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within SCCF, which personally affects the inmates." (*Id.* ¶¶ 113–14.) This policy requires an inmate to submit a grievance within "seven calendar days of the occurrence giving rise to the grievance." (*Id.* at PageID# 332, ¶ 115.) A grievance may be returned as "inappropriate" if the grievance relates to institutional placement, classification, or security threat group placement, and an inmate may appeal the grievance's designation as inappropriate or refile an "appropriate" grievance. (*Id.* ¶¶ 117–18.)

SCCF maintains records of all properly filed inmate grievances through the Tennessee Offender Management Information System (TOMIS). (*Id.* at PageID# 333, ¶ 120.) TOMIS records show that Taylor filed one grievance that was received on April 6, 2016, and no other grievances concerning the facts alleged in his complaint while incarcerated at SCCF. (*Id.* at PageID# 333–34, ¶¶ 122–23.) The April 6 grievance was deemed inappropriate because it was untimely and involved a disciplinary matter. (*Id.* at PageID# 334, ¶¶ 126–27.) Taylor agrees that his "last grievance" was deemed untimely but states that "the first 2 [were] never answered." (*Id.*, ¶ 126.) In apparent conflict with that statement, Taylor also states it is "undisputed" that he filed no grievances other than the April 6 grievance concerning these incidents. (*Id.*, ¶ 128.)

### B. Procedural History

Taylor filed this action on June 20, 2016, under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights arising out of the February and March altercations. (Doc. No. 1.) On November 17, 2016, Lindamood and Inman filed a motion for summary judgment (Doc. No. 31), accompanied by a supporting memorandum of law (Doc. No. 32) and statement of undisputed material facts (Doc. No. 33), as well as declarations from Lindamood (Doc. No. 35), Inman (Doc.

3

No. 36), and Leigh Staggs, SCCF's Grievance Chairperson (Doc. No. 34). Taylor has filed a response in opposition (Doc. No. 50) to which Defendants filed a reply (Doc. No. 51).

Taylor filed a motion for summary judgment on February 2, 2017 (Doc. No. 58), accompanied by a memorandum of law (Doc. No. 59), statement of undisputed material facts (*id.* at PageID# 377–85), and declarations from inmate Christopher Taylor (*id.* at PageID# 386–87) and Taylor (*id.* at PageID# 388–92). Defendants have responded in opposition. (Doc. Nos. 61, 62.)

## II.  Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, the moving party must prove the absence of a genuine issue of material fact as to any essential element of the opposing party's claim. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Stiles ex rel. D.S. v. Grainger Cty., Tenn., 819 F.3d 834, 847 (6th Cir. 2016). In determining whether the moving party has met its burden, a court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); *Stiles*, 819 F.3d at 848. A court must not weigh the evidence and determine the truth of the matters asserted but instead must "determine whether there is a genuine issue for trial." Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 775 (6th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to judgment as a matter of law. Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (citation omitted). To preclude summary judgment, the nonmoving party must go beyond

the pleadings and present specific facts demonstrating the existence of a genuine issue for trial. Shreve v. Franklin Cty., Ohio, 743 F.3d 126, 132 (6th Cir. 2014) (citations omitted). "A mere scintilla of evidence by the nonmoving party is insufficient to defeat summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].'" St. Clair Marine Salvage, Inc. v. Bulgarelli, 796 F.3d 569, 574 n.2 (6th Cir. 2015) (alteration in original) (quoting Anderson, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment may be granted. Anderson, 477 U.S. at 249–52. "[O]n cross-motions for summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Dixon v. Univ. of Toledo, 702 F.3d 269, 273 96th Cir. 2012) (quoting B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 592 (6th Cir. 2001)).

**III.    Analysis**

   **A.    Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust all his available administrative remedies before filing any lawsuit "about prison life." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). "The purposes of the exhaustion requirement include 'allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.'" Thompson v. Robertson, No. 3:15-cv-1527, 2017 WL 1048018, at *4 (M.D. Tenn. Mar. 20, 2017) (quoting *Jones*, 549 U.S. at 219). "[F]ailure to

5

exhaust is an affirmative defense under the PLRA," Jones, 549 U.S. at 216, and as such, Defendants have "the burden to plead and prove [it] by a preponderance of the evidence." Lee v. Willey, 789 F.3d 673, 677 (6th Cir. 2015). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). "Proper exhaustion demands compliance with . . . deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90–91.

Pursuant to TDOC policy, "[g]rievances must be filed . . . within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance." (*Id.* at PageID# 282.) "[W]here a prisoner fails to file his grievances timely under prison procedures, the prisoner's Section 1983 claims should be dismissed." *See* Hodge v. Todd, No. 1:14-00022, 2014 WL 5410274, at *2 (M.D. Tenn. Oct. 21, 2014) (citing Woodford, 548 U.S. at 87)). Defendants argue that Taylor failed to properly exhaust his claims because he filed only one grievance concerning the events of February 18, 2016, and March 6, 2016, and that grievance, received on April 6, 2016, was untimely. (Doc. No. 32, PageID# 124–25.)[3] Defendants also argue that Taylor's grievance was inappropriate because it addressed a disciplinary matter. (Doc. No. 50, PageID# 264–67; Doc. No. 34-1.) Taylor responds that the April 6 grievance "was the third inmate grievance filed by plaintiff about this matter," implying that he filed earlier timely grievances. (Doc. No. 50, PageID#

---

[3] Defendants also contend that Taylor did not exhaust his administrative remedies because his grievance "failed to name or reference either Defendant . . . and because said grievance improperly concerned a disciplinary issue." (Doc. No. 32, PageID# 125.) The Court does not address these arguments because it finds that the untimeliness of Taylor's grievance is dispositive.

6

241, 334.) Taylor also argues that he exhausted his claims because another inmate, Richard Williamson, filed a grievance addressing the same incidents. (*Id.* at PageID# 241, 244, 274–80.)

With respect to the argument that he filed two earlier grievances, Taylor has not met his burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Moldowan, 578 F.3d at 374. The parties do not dispute that "SCCF maintains records of all inmate grievances properly filed and those inmate grievances are recorded in the Tennessee Offender Management Information System ('TOMIS'), a computerized database for the TDOC." (Doc. No. 50, PageID# 333, ¶ 120.) Taylor's only grievance recorded in TOMIS is the April 6, 2016 grievance. (*Id.* ¶¶ 122–23.) Leigh Staggs's declaration also certifies that, based on her review of TOMIS, "Plaintiff filed no other grievances concerning the facts alleged in his Complaint while incarcerated at SCCF in 2016." (Doc. No. 34, PageID# 159, ¶ 16.)

Because Defendants have made an initial showing that there is no genuine issue of material fact as to these earlier grievances, the burden shifts to Taylor to provide evidence beyond the pleadings to demonstrate "a genuine issue for trial." Moldowan, 578 F.3d at 374. Although Taylor asserts that he filed prior grievances, he provides no evidence to support that statement. Taylor cites his declaration as support for the statement that the April 6, 2016 grievance "was the third inmate grievance filed by plaintiff about this matter." (Doc. No. 50, PageID# 241 (citing "Declaration of plaintiff at D1").) But Taylor's declaration does not mention any earlier grievances, and he cites no other evidence that other grievances were filed. (*See id.* at PageID# 268–71.) He has failed to demonstrate a genuine issue of fact on this issue. *See* Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment.").

7

Taylor also points to a grievance filed by fellow inmate Williamson about these events, which he states was fully exhausted. (Doc. No. 50, PageID# 241, 244.) But an inmate may only rely upon another inmate's grievance for exhaustion purposes in limited circumstances. The doctrine of vicarious exhaustion allows a single member of a class action to satisfy the exhaustion requirement for all class members by exhausting his or her own administrative remedies with respect to each class-action claim. McGoldrick v. Werholtz, 185 F. App'x 741, 743 (10th Cir. 2006). That doctrine does not apply outside of the class-action context, however, and it does not help Taylor here. Rumsey v. Mich. Dep't of Corr., No. 1:10-cv-880, 2013 WL 5517888, at *2 (W.D. Mich. Oct. 1, 2013) (finding vicarious exhaustion inapplicable in non-class action); J.P. v. Taft, 439 F. Supp. 2d 793, 822 n.27 (S.D. Ohio 2006) (rejecting applicability of vicarious exhaustion "because the Court denied class certification in its previous opinion" and because only one named plaintiff remained in action); Hattie v. Hallock, 8 F. Supp. 2d 685, 689 (N.D. Ohio 1998) (stating that the doctrine of vicarious exhaustion "is only available to plaintiffs in a class-action lawsuit, where a class is certified pursuant to Fed. R. Civ. P. 23(b)(2)" (citing Hartman v. Duffey, 88 F.3d 1232, 1235 (D.C. Cir. 1996)). *But see* Doss v. Gilkey, 649 F. Supp. 2d 905, 912–13 (S.D. Ill. 2009) (noting that one prisoner's grievances "could arguably satisfy the exhaustion requirement" for his putative wife, another prisoner, but finding exhaustion requirement unmet based, in relevant part, on fact that prison regulations did not specifically provide for multiple inmates filing a single grievance).

Because Taylor has failed to properly exhaust his administrative remedies pursuant to TDOC policy, as the PLRA requires, Defendants are entitled to judgment as a matter of law on Taylor's claims. *See* Howard v. Tenn. Dep't of Corr., No. 1-12-0004, 2013 WL 3353893, at *6 (M.D. Tenn. July 2, 2013).

B.     The Parties' Other Arguments

The parties make a number of additional arguments in their summary judgment briefing. First, citing Federal Rule of Civil Procedure 56(f), Taylor argues that summary judgment should be denied based on his then-pending discovery request for video footage of the March 7, 2016 incident. (Doc. No. 50, PageID# 239.) However, Defendants have certified they do not have the requested video footage, (Doc. No. 56, PageID# 357–58), and, in any case, video footage of the February or March altercations would not remedy Taylor's failure to exhaust.

Finding Taylor's failure to exhaust dispositive, the Court likewise does not address the parties' arguments related to the application of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), or the merits of Taylor's Eighth Amendment claim. (Doc. No. 32, PageID# 126, 128–34; Doc. No. 50, PageID# 245–52; Doc. No. 59, PageID# 371–76; Doc. No. 61, PageID# 442–47.)

**IV.    Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 31) is **GRANTED**. All other pending motions are **DENIED AS MOOT**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE